# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

———————————

**TERESA L. CASKEY,**

                    **Plaintiff,**

**vs.**                                                    **CIV No.   96-1803 JP/LFG**

**COMMONWEALTH BROADCASTING,
INC., and CRESCENT COMMUNICATIONS,
INC.,**
                    **Defendants.**

## MEMORANDUM OPINION AND ORDER

The subjects of this Memorandum Opinion and Order are: (1) Crescent Communications'
Motion for Summary Judgment (Doc. No. 54) filed December 8, 1997; Commonwealth
Broadcasting's Motion for Summary Judgment on Count I, III, IV, V & VI (Doc. No. 62) filed
December 8, 1997; and (3) Commonwealth Broadcasting's Motion for Summary Judgment on the
Retaliation Claim (Doc. No. 58) filed December 8, 1997.

At a motion hearing held on January 7, 1998, and continued on January 16, 1998, plaintiff
was represented by Gilbert Vigil, Esq., Mark Hendricks, Esq. and Jill Smith, Esq.  Defendant
Commonwealth Broadcasting ("Commonwealth") was represented by Virginia Anderman, Esq.
and Defendant Crescent Communications ("Crescent") was represented by Robert Conklin, Esq.
and Jacqueline M. Woodcock, Esq.  On January 7, 1998, at the end of the first day of the motion
hearing, I announced my ruling granting Crescent's Motion for Summary Judgment as to
plaintiff's federal Title VII claims in Counts I and II and declining to exercise jurisdiction over
plaintiff's pendent state law claims in Counts III, IV, V, and VI.  After a thorough consideration

of the facts, law, and arguments of counsel, I conclude that Commonwealth's motions as to

Counts I and II should also be granted and I will decline to exercise pendent jurisdiction over

plaintiff's state law claims against Commonwealth in Counts III-VI.[1]

## I.   CRESCENT'S MOTION FOR SUMMARY JUDGMENT

### A.      Identity of Interest

Plaintiff, Ms. Caskey, served as an account executive for the KRST-FM ("KRST") radio

station from October, 1989 until her resignation on November 21, 1995. Commonwealth owned

KRST until October 6, 1995.  On October 6, 1995 Commonwealth sold KRST to Crescent.

Crescent owned KRST at the time of plaintiff's resignation.

I ruled as a matter of law that Crescent and Commonwealth are not interrelated entities

and therefore that no "identity of interest" exists between them.  To determine the

interrelationship between two entities for Title VII purposes the United State Court of Appeals

for the Tenth Circuit applies a four-part test which assesses the degree of (1) interrelated

operation; (2) centralized control of labor relations; (3) common management; and (4) common

ownership.  *See Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1362 (10th Cir. 1993) (analyzing parent-

subsidiary relationship); *and Evans v. McDonalds Corp.*, 936 F.2d 1087, 1089-90 (10th Cir.

1991) (assessing a franchisee-franchiser relationship).  The plaintiff produced evidence regarding

only one of these four factors – common management.  None of the other facts weighed in favor

of finding an identity of interest.  Therefore, I ruled that the actions and events which occurred

---

[1]During the hearings, counsel for plaintiff made numerous references to alleged facts
which were not contained in the briefing.  Consequently, in accordance with FED. R. CIV. PROC.
56(d), this ruling is based upon all of the evidence which I understand to be in the record as a
result of the parties' briefing and counsel's responses to my questions at the hearings.

during Commonwealth's ownership of KRST could not be applied to Crescent and vice versa.

**B.    Title VII**

Plaintiff did not establish a genuine issue of material fact regarding her Title VII claims of

sex discrimination, sex harassment, retaliation, and constructive discharge against Crescent.

### 1.    *Sex Discrimination and Sex Harassment*

During her deposition, plaintiff admitted that the allegations of sex discrimination and sex

harassment contained in Count I do not apply to Crescent:

> I don't believe that I have anything specific with harassment with Crescent
> that I'm remembering.
>
> \*   \*   \*
>
> Between Crescent – I don't believe at this time that I was discriminated
> against by Crescent because I'm female, that I'm remembering.

Caskey Dep. Vol. III at 644-645.

In addition to this admission, at the hearing plaintiff's counsel could not point to any

evidence establishing a genuine issue of material fact regarding claims of sex discrimination or

harassment during Crescent's ownership of KRST.   Therefore, I granted summary judgment in

Crescent's favor on those claims.

### 2.    *Retaliation*

Plaintiff also failed to produce evidence creating a genuine issue of material fact regarding

her Title VII retaliation claim against Crescent.   The allegations contained in plaintiff's complaint

do not apply to Crescent.   They all occurred during Commonwealth's tenure as owner of KRST

prior to Crescent's buying KRST.   In addition, the "protected activities" in which plaintiff

engaged (i.e. her participation in the investigation of the Anna Ayala charge and the filing of her

own EEOC charge) involved EEOC charges made solely against Commonwealth, not Crescent.

It does not follow that Crescent would retaliate against plaintiff for her EEOC-related activities directed solely at another, separate entity.  In addition, it is undisputed that in October of 1995 Crescent knew of plaintiff's charge against Commonwealth.  Yet, Crescent made a wholly independent nonobligatory decision to hire her.  Transcript of Pretrial Conference  on January 7, 1998 ("Tr. I") at 27.  In addition, as will be explored below in the discussion of Commonwealth's Motion for Summary Judgment, no adverse action was taken against plaintiff and she has failed to prove a causal connection between her protected activity and Crescent's supposed retaliatory acts.  Therefore, she failed to establish a prima facie case of retaliation.  *See Archuleta v. Colorado Dept. of Institutions,* 936 F.2d 483, 486 (10th Cir. 1991) (holding that plaintiff must demonstrate "adverse action by the employer subsequent to the protected activity" and a causal connection between her activity and the adverse action).

### 3.    *Constructive Discharge*

In addition, plaintiff failed to establish a genuine issue of material fact regarding her Title VII constructive discharge claim against Crescent.

In order to determine whether a resignation is voluntary, four factors must be analyzed:

> (1) whether the employee was given some alternative to resignation;
> (2) whether the employee understood the nature of the choice he was given; (3) whether the employee was given a reasonable time in which to choose; and (4) whether he was permitted to select the effective date of resignation.

*Parker v. Board of Regents of Tulsa Jr. College*, 981 F.2d 1159, 1162 (10th Cir. 1992) (citation omitted).

The standard for determining whether an employee was constructively discharged is an objective one:

> Constructive discharge occurs when a reasonable person in the employee's position would view the working conditions as intolerable. That is to say the working conditions, when viewed objectively, must be so difficult that a reasonable person would feel compelled to resign. A plaintiff's subjective views of the situation are irrelevant. Essentially, a plaintiff must show that she had *no other choice* but to quit.

*Yearous v. Niobrara County Memorial Hosp.*, 128 F.3d 1351, 1356 (10th Cir.1997) (emphasis in original) (internal quotations and citations omitted), *petition for cert. filed* (U.S. Feb. 17, 1998) (No. 97-1332). The totality of circumstances must be analyzed. *Parker v. Board of Regents of the Tulsa Junior College,* 981 F. 2d 1159, 1162 (10th Cir.1992) (stating "[a] resignation will be involuntary and coerced when the totality of the circumstances indicate that the employee did not have the opportunity to make a free choice"). "[A] series of questionable judgments leading to difficult working conditions does not alone support a claim of constructive discharge or unconstitutional misconduct." *Yearous*, 128 F.3d at 1356.

At the hearing I discussed each of the four determinative factors in detail with counsel. Counsel for plaintiff admitted during the hearing that plaintiff was given a reasonable time in which to choose resignation, as no deadline was imposed on her. Counsel for plaintiff also agreed that plaintiff understood the nature of her choice to resign; she acknowledged this on November 21, 1995, by signing a letter which stated "You have voluntarily chosen to resign your position after indicating to me that you were unhappy working at this station." Exh. J to Crescent's Motion for Summary Judgment.

Plaintiff has failed to establish under the totality of circumstances a genuine issue of material fact on the issue of whether a reasonable person in plaintiff's position would have had "*no other choice* but to quit."

### C.    State Law Claims

In Counts III through VI, plaintiff asserts a number of state law claims against Crescent. Because  I granted summary judgment on plaintiff's federal claims under Title VII, I declined to exercise supplemental jurisdiction over plaintiff's state law claims against Crescent.

### D.    Waiver

Finally, I found that plaintiff waived her claims against Crescent by failing to seek arbitration.  This was required by an employment agreement signed by plaintiff on October 18, 1993 and eventually assigned to Crescent in 1995.  Exhibit I to Crescent's Motion for Summary Judgment.

Crescent raised this waiver argument in its motion for summary judgment.  Plaintiff failed to respond to it.  Under D.N.M.LR-Civ. 7.5(b), plaintiff's failure to respond to this argument constitutes consent to grant it.  In addition, I found that Crescent's waiver argument has merit. The language of the Agreement appears to be clear and plaintiff does not dispute that she failed to comply with the requirement of seeking arbitration for the claims that she is now asserting against Crescent.

## II.  COMMONWEALTH'S MOTIONS FOR SUMMARY JUDGMENT

### A.    Standard

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to "'secure the just, speedy and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).  A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and ... the

moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, *Harsha v. United States,* 590 F.2d 884, 8887 (10th Cir. 1979), the burden on the moving party may be discharged by demonstrating to the district court that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. In such a situation, the moving party is entitled to judgment as a matter of law, "because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id*. at 322.

The non-moving party must present more than a mere scintilla of evidence in order to overcome a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2511 (1986) ("[B]efore the evidence is left to the jury, there is a preliminary question for the judge,...whether there is any upon which a jury could properly proceed to find a verdict for the party producing it....") *See also Hom v. Squire*, 81 F.3d 969, 973 (10th Cir. 1996) (citing *Anderson*, *supra*, for the proposition, "the non-moving party must present more than a mere scintilla of evidence"). "The relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Bingaman v. Kansas City Power & Light Co.*, 1 F.3d 976, 980 (10th Cir. 1993). *See also Woodman v. Runyon,* 132 F.3d 1330, 1337 (10th Cir. 1997) (quoting *Bingaman*).

B.    *Motion for Summary Judgment on the Retaliation Claim*

1.    Background

The facts viewed in the light most favorable to the plaintiff are as follows.   Between June

and August of 1994 plaintiff participated in an EEOC investigation of a charge of discrimination

filed by Anna Ayala.  On August 6, 1995 plaintiff filed her own charge of discrimination against

Commonwealth with the EEOC.  After plaintiff engaged in this "protected activity," the following

events occurred:  she felt ostracized, she was excluded from a lunch, she felt her supervisors were

rude to her, she failed to meet her monthly goals, management set her goals too high, on one

occasion a preempt list was not put into her inner-office mail box, her radio spots were

"preempted,"[2] one of her vacation requests was denied, she received a negative evaluation,

managers gave "her" accounts to other account executives, she got memoranda from management

"for no reason" concerning her work performance,[3] and  management threatened to discharge her.

To establish a prima facie case of retaliation, plaintiff must show: (1) that she engaged in

protected opposition to discrimination or participated in proceedings arising out of discrimination;

---

[2]Counsel for plaintiff attempted to clarify what "preempting of spots" means.  See Transcript of Pretrial Conference on January 16, 1998 ("Tr. II"), at 60.  Although the explanation was unclear, it appears that this allegation means that the advertising spots which plaintiff sold to KRST-clients would sometimes not be aired, or "cleared," when she expected them to be aired; instead, plaintiff alleges that other account executive's "spots" would preempt her spots and be aired instead.

[3]Plaintiff states in her deposition that Commonwealth's hiring of Michelle Kalanja was a retaliatory act; plaintiff contends that Ms. Kalanja was hired specifically to fire plaintiff, but this contention is based on inadmissible hearsay and she presented no admissible evidence supporting this allegation.  She contends that Sandy Pepe, one of her co-workers would testify to the veracity of this (Tr. II at 39) but with her response to the motion for summary judgment she presented no affidavit or sworn deposition testimony of Ms. Pepe.  Indeed, Ms. Pepe had not even been deposed at the time of the hearing before me.  Tr.II at 40.

(2) adverse action by the employer against the plaintiff subsequent to the protected activity; and

(3) a causal connection between the plaintiff-employee's activity and the adverse action.

*Archuleta,* 936 F.2d at 486.

Once the plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse action.  *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986 (10th Cir. 1996) (citations omitted).  If a prima facie case is established and the defendant presents evidence of a legitimate business reason for the action taken, "the plaintiff must then be allowed to demonstrate that the defendant's offered reasons are a mere pretext for discrimination.  *Id.*

A defendant who has met its burden in stating a non-discriminatory reason is entitled to summary judgment if the plaintiff fails to present a genuine issue of material fact establishing pretext.  *See Meredith v. Beech Aircraft Corp.*, 18 F. 3d 890, 897 (10th Cir. 1994).  In the retaliation context, the plaintiff is "obliged to produce not simply 'some' evidence, but 'sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the employer were false, and that more likely than not [discrimination] was the real reason for the discharge.'" *Karen Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 714 (2d Cir. 1996) (quoting *Woroski v. Nashua Corp.*, 31 F.3d 105, 110 (2d Cir. 1994) (citing *St. Mary's Honor College*)).

    2. <u>Prima Facie Case</u>

      (a) *Protected Activity*

The parties agree that plaintiff has met the first requirement.  She engaged in protected activity by participating in the investigation of the Ayala charge and by filing her own charge.

9

(b)      *Adverse Action*

Plaintiff cannot establish the second element, that an adverse action was taken against her.

Apparently the Tenth Circuit has not yet precisely defined adverse employment action.

However, it appears that the Tenth Circuit believes that action alleged to be retaliatory must be of

a very serious nature.  The Tenth Circuit has held that the filing of criminal charges against a

plaintiff is sufficiently adverse (*Berry v. Stevinson Chevrolet*, 74 F.3d 980 (10th Cir. 1996)), that

failing to select a plaintiff as a new director after the plaintiff filed a charge of discrimination was

presumptively adverse (*Purrington v. University of Utah*, 996 F.2d 1025 (10th Cir. 1993) (claim

was rejected on summary judgment where defendant offered sufficient explanation of decision not

to hire plaintiff as director)), and that reassigning a plaintiff over her protest following complaints

of sexual harassment satisfied the adverse action requirement (*Sauers v. Salt Lake County*, 1 F.3d

1122, 1128 (10th Cir. 1993)).  On the other hand, the Tenth Circuit has said that giving a lower

performance evaluation and threatening to increase the number of evaluations of a teacher were

not adverse enough.  *See Cole v. Ruidoso Municial Schools*, 43 F.3d 1373, 1381 (threatening to

evaluate plaintiff more often than other senior teachers not sufficient adverse action; and, Board's

change of explanation regarding why it did not renew her contract not material where it did not

"adversely effect her employment").  Additionally, the Tenth Circuit has indicated that evidence

that a discharged employee was simply disliked by her supervisors is insufficient evidence of

retaliation.  *Archuleta,* 936 F.2d at 487 (finding that "evidence in the record that personal

animosity may have played a part in the plaintiff's termination" did not support finding of

retaliation).

District courts within the Tenth Circuit have reached conflicting conclusions regarding the

proper standard to apply in determining what employment actions qualify as "adverse actions." For example, the United States District Court for the District of Utah concluded that the plaintiffs' "subjective feeling that they were retaliated against [was] simply insufficient to create a genuine issue of material fact." *Metcalf v. Metropolitan Life, Inc.,* 961 F. Supp. 1536, 1544 (D. Utah 1997). There, the plaintiffs had alleged that fellow employees treated them "almost contemptuously," and that they were subjected to "isolation treatment" and public criticism about their work performance. The court found that "no Title VII liability exists because of 'unpleasant relationships [they] had with [their] coworkers.'" *Id.* (quoting *Landgraf v. USI Film Prods.*, 968 F.2d 427, 430-31 (5th Cir. 1992)). In *Fortner v. State of Kansas*, 934 F.Supp. 1252 (D.Kan. 1996), *aff'd*, 122 F.3d 40 (10th Cir. 1997), the United States District Court for the District of Kansas exhaustively reviewed case law relating to federal courts' interpretations of the term "adverse action," and concluded that adverse actions must be something more than "mediate decisions by an employer which are ... ephemeral in nature and effect." *Id.* at 1267. *But cf. Deavenport v. MCI Telecommunications Corp.,* 973 F.Supp. 1221, 1224-1227 (D.Colo. 1997) (declining to follow Fifth Circuit in *Mattern*, *infra*, and defining adverse actions broadly as "employment-related decisions made directly by the employer"; specifically finding that employer's actions in taking away "major work assignments" and requiring employee to travel extensively constitute adverse actions).

      The United States Court of Appeals for the Fifth Circuit has held that Title VII is designed to protect against retaliatory acts that constitute "ultimate employment decisions" such as hiring, granting leave, discharging, promoting and compensating. *Mattern v. Eastman Kodak Company*, 104 F.3d 702, 708-709 (5th Cir.), *cert. denied*, 118 S.Ct. 336 (1997). *See also*

*Metcalf, supra,* 961 F. Supp. at 1544 (relying on *Mattern* for proposition that "Title VII designed to address ultimate employment decisions"). In *Mattern*, the Fifth Circuit persuasively reasoned that Title VII should not be read to include vague harms such as "hostility from fellow employees, ... and resulting anxiety." *Id.* at 707. Indeed, the Fifth Circuit found that other more serious events, such as verbal threats of being fired, reprimands for not being at an assigned station, a missed pay increase, and a placement of an employee on "final warning ... do not constitute 'adverse employment actions' because of their lack of consequence." *Id.* at 708. If actions such as these do not constitute adverse employment decisions, then plaintiff's allegations certainly do not either.

The Fifth Circuit in *Mattern* relied heavily on one of its earlier decisions, *Dollis v. Rubin*, 77 F.3d 777 (5th Cir. 1995). There, the employee contended that she was refused consideration for promotion, was refused permission to attend a training conference, had her work criticized to a government vendor, and was given false information regarding aspects of her employment. The Fifth Circuit found that these acts did not constitute ultimate employment decisions, and that they were at most "tangential" to future decisions that might be ultimate employment decisions. *Id.* at 782 . The court there and in *Mattern* refused to expand the definition of "adverse employment action" to open the door to a multitude of claims for minor "retaliations."

Similar results have been reached by the Eighth, Seventh and First Circuits. *See Montandon v. Farmland Industries, Inc.*, 116 F.3d 355, 359 (8th Cir. 1997) (stressing that "not everything that makes an employee unhappy is an actionable adverse action" and concluding that transferring an employee to another location and giving him a negative evaluation did not constitute adverse employment actions); *Little Rock School Dist. v. State of Ark.,* 127 F.3d 693

(8th Cir. 1997) (finding that plaintiff's allegations that her supervisors were hostile to her, and

disrespected and ostracized her did not rise to the level of an adverse employment action); *Smart*

*v. Ball State University,* 89 F.3d 437 (7th Cir. 1996) (affirming trial court's ruling that a negative

performance evaluation did not constitute adverse action -- to hold "[o]therwise [would mean

that] minor and even trivial employment actions that 'an irritable, chip-on-the-shoulder employee

did not like would form the basis of a discrimination suit"); *Rabinovitz v. Peña*, 89 F.3d 482 (7th

Cir. 1996) (holding that a lower performance rating, loss of bonus, and job restriction were not

sufficient to create a prima facie case of retaliation); *and Blackie v. State of Maine*, 75 F.3d 716

(1st Cir. 1996) (FLSA case were court cited Title VII cases and held that "the mere fact that an

employee is displeased by an employer's act or omission does not elevate that act or omission to

the level of a materially adverse employment action).

        In this case, plaintiff alleges many "facts" which do not appear to be sufficiently adverse.

For example, she contends that she felt ostracized, she was excluded from a lunch, and she felt her

supervisors were rude to her.  None of these events substantially altered her job conditions.

Plaintiff's income was never adversely affected, and, in fact, she testified under oath that she could

recollect no income loss in 1994 and that she made more money in 1995 than in any previous

year.  Caskey Dep. Vol. III at 693-694 (plaintiff states that she could remember no income loss in

1994 and agreed that it was fair to say that 1995 was her "best year ever").  Plaintiff also alleges

that her supervisors or managers made "weird" comments about plaintiff to plaintiff and to her co-

workers, but most of her testimony on this matter is based on inadmissible hearsay (*see, e.g.,*

Caskey Dep. Vol. I at 242-243) and even if admissible, those comments are not "adverse

employment decisions."  She contends that management failed to give her memoranda on

13

occasion, but admitted that she "always [found] out about them, because people alerted me to it," and that "it didn't cause a problem...."  Caskey Dep. Vol. I at 280-281.

Plaintiff testified under oath that on one occasion in May of 1995 a preempt list was not put into her inner-office mail box and that she perceived this as a retaliatory act.  However, plaintiff admitted that she was on a cruise-vacation at the time the list was not placed into her box and that she could recall no other occasion over the course of her employment where she did not receive the list.  Caskey Dep. Vol. I at 279.

Plaintiff also claims that management threatened to fire her.  Plaintiff, when asked to clarify this allegation, stated that management warned her that a repeat of an incident involving her husband could lead to her discharge, but she was never discharged, and there was no adverse *action* taken.  *See* Caskey Dep. Vol. I at 214.

Plaintiff further maintains that management set her goals too high and that, because of this, she failed to meet her monthly goals.  She claims that by doing this, management was "setting her up for termination," Tr. II at 46, but the fact is that Commonwealth never terminated her.[4]

Plaintiff also avers that she received a negative or unfavorable evaluation from her supervisor, but that evaluation did not affect her employment status or her income.  In addition, although plaintiff says that the evaluation was negative, she neither offered an explanation of the rating method used, nor provided evidence regarding any other evaluations of her work or that of her co-workers.  Without a frame of reference upon which to base a conclusion that the

---

[4]At the second pretrial conference counsel for plaintiff presented the disingenuous argument that Commonwealth did in fact terminate plaintiff because Commonwealth sent her a letter at the time Commonwealth sold KRST that stated, "Your employment is terminated with Commonwealth."  When pressed, however, counsel for plaintiff admitted that every other Commonwealth employee at that time was also "terminated."  Tr. II at 46-47.

evaluation was unfavorable, this allegation cannot defeat a motion for summary judgment.  *See, e.g., Meredith v. Beech Aircraft Corp.*, 18 F.3d 890, 896 (10th Cir. 1994) (finding that alleged "negative" performance evaluation, without explanation of the meaning of the evaluation ratings used on the evaluation form, was not "adverse action").  *See also Durham v. Xerox Company*, 18 F.3d 836, 839 (10th Cir.) (noting that a plaintiff's disagreement with a subjective performance evaluation "obviously does not prove discriminatory intent"), *cert. denied*, 513 U.S. 819 (1994).

Plaintiff claims that her radio spots were "preempted," and that she got memoranda from management "for no reason" concerning her work performance, but as stated earlier, there is no evidence that her income declined as a result or that this resulted in any adverse action.  Plaintiff also contends that one of her vacation requests was denied in September of 1995, but this contention is incomprehensible.  She testified during her deposition that she "couldn't understand" the leave system (Caskey Dep. Vol. II at 332), and she did not know if her pay was docked. Caskey Dep. Vol. II at 336.

Finally, plaintiff alleges that Commonwealth gave two of "her" accounts, the "Big 5" sporting goods account and the Don Chalmers-Ford account, to other account executives, but this is not an uncommon business practice and plaintiff's income never was affected adversely.  In addition, as explained below, plaintiff cannot prove a causal connection between her protected activity and her allegations that these two accounts were taken away from her, and she has no evidence that Commonwealth's non-retaliatory explanations are pretexts for retaliation.

Plaintiff simply has failed to show that she suffered an adverse employment action that was materially detrimental to her position as an account executive at Commonwealth and, therefore, she has failed to establish a prima facie case of retaliation.

15

(c)      *Causal Connection*

Even if plaintiff were considered to have suffered some adverse employment actions, plaintiff has very little, if any, evidence to demonstrate a causal connection between her protected activity and the allegedly adverse actions.  In plaintiff's case almost one year elapsed between the "protected activity" and most of the acts she contends were retaliatory.  The Tenth Circuit has held that a retaliatory motive can be inferred only when close temporal proximity exists between the protected activity and the adverse action.  *Candelaria v. EG & G Energy Measurements, Inc.*, 33 F.3d 1259, 1261-1262 (10th Cir. 1994).  The Tenth Circuit has "rejected attempts to unduly stretch the 'close temporal proximity' required under this standard."  *Marx v. Schnuck Markets, Inc.,* 76 F.3d 324, 329 (10th Cir.), *cert. denied*, 116 S.Ct. 2552 (1996).  *See also Connor v. Schnuck Markets,* Inc., 121 F.3d 1390 (10th Cir. 1997) (holding that a four-month time lag between the plaintiff-employee's participation in FLSA protected activity and his termination insufficient to justify an inference of causation); *Ramirez v. Okla. Dept. of Mental Health,* 41 F.3d 584, 596 (finding that layoffs occurring less than two months after engagement in protected activity "sufficiently probative of a retaliatory motive"); *and Burrus v. United Telephone Co. of Kansas, Inc.*, 683 F.2d 339 (10th Cir.) (holding that plaintiff failed to establish prima facie case of retaliation where plaintiff's termination happened three years after she filed charge of gender discrimination), *cert. denied,* 459 U.S. 1071 (1982).  *Cf. Oliver v. Digital Equipment* Corp., 846 F.2d 103, 110-11 (1st Cir. 1988) (concluding that discharge over two-and-one-half years after employee filed EEOC complaint was insufficient showing of retaliation to avoid summary judgment for employer).

Plaintiff failed to meet this element of causal connection even of she could demonstrate a

close temporal proximity.  Again, plaintiff simply did not produce enough evidence of a causal connection between her protected activity and the supposed adverse actions taken against her.

3.    Legitimate Non-discriminatory Explanations for "Adverse Actions"

Even if the transfers of the two client accounts, discussed above, could be considered adverse actions, and even if plaintiff demonstrated a causal connection, Commonwealth offers legitimate non-discriminatory reasons for them.

Plaintiff's position is that management at KRST gave two of her accounts, the Big 5 Sporting Goods account and the Don Chalmers-Ford account, to other account executives. Commonwealth offers a legitimate non-discriminatory business explanation in response: account executives are told that accounts belong to the KRST station, not to individual account executives, and accounts may be assigned or reassigned as management feels is appropriate.  As a general rule, Commonwealth explains, account executives are assigned the accounts which they solicit.  However, sometimes accounts need to be given to another account executive due to circumstances such as potential conflicts of interest or to accommodate a client's needs.  Cindy Weiner Supp'l Aff. ¶ 3. Commonwealth contends that both the Big 5 and the Don Chalmers-accounts fell into these exceptions.

Commonwealth states that it is was not uncommon that when a business that advertised with KRST was sold to another entity, the account executive who had worked the previous KRST account retained the account, if the new ownership elected to continue to advertise with KRST.  Cindy Weiner Supp'l Aff. ¶ 4.  Plaintiff claims that she had solicited the account of the new owner, Big 5, but during her deposition, plaintiff admitted that the Big 5 account was assigned to the same account executive who had been responsible for the account of the

predecessor company, Gardenschwartz Sports, that had sold out to Big 5.  Caskey Dep. Vol. I at 263-264.

Regarding the Don Chalmers Ford account, Commonwealth explains that because plaintiff already was handling the account of another competing Ford company, the Bob Turner Ford account, management decided that it would not be appropriate for her also to handle the new Don Chalmer's Ford account.  Commonwealth attempted to avoid any perception of a conflict of interest or divided loyalty.  Cindy Weiner Supp'l Aff. ¶ 6.

4.     Lack of Evidence that Non-discriminatory Explanations are Pretexts for Discrimination

Plaintiff has offered insufficient evidence to support an inference that Commonwealth's non-discriminatory explanations were a pretext for discrimination.

The record reflects no genuine issue of material fact regarding plaintiff's retaliation claim which should be dismissed with prejudice.

**C.     *Motion for Summary Judgment on Counts I, III, IV, V & VI***

**1.     SEX DISCRIMINATION**

Plaintiff alleges that she "suffered continuous discrimination and harassment based upon her sex."  First Amended Complaint, ¶ 7.  Because plaintiff has failed to present evidence sufficient to support a claim of sexual discrimination, I will dismiss this claim with prejudice.

–     *Overview Regarding Timeliness of Plaintiff's Allegations*

Plaintiff is required to bring a claim under Title VII within 300 days.  *See* 42 U.S.C. § 2000e-5(e)(1).  Plaintiff filed her Title VII charge of discrimination against Commonwealth on August 7, 1995.  Many of the specific acts of discrimination about which plaintiff complains took place more than 300 days before she filed her charge of discrimination. Therefore, many of

18

plaintiff's Title VII claims are untimely.  In response, plaintiff asserts a "continuing violation" theory.  In order to invoke this theory, plaintiff must show either: (1) a series of related acts taken against a single individual, one or more of which falls within the limitations period, or (2) the maintenance of a company-wide policy of discrimination both before and during the limitations period which evidences an institutionalized, pervasive "system" of discrimination.  *Parrett v. Raytheon*, 1996 WL 108494, No. 95-3146 (10th Cir. Feb. 29, 1996); *Purrington v. University of Utah*, 996 F.2d 1025, 1028-29 (10th Cir.1993); and *Bruno v. Western Elec. Co.,* 829 F.2d 957, 961 (10th Cir. 1987).

In plaintiff's EEOC Charge she indicated under the space marked "Date Discrimination Took Place" that the discriminatory acts extended from July 3, 1994 until August 2, 1995 and she checked the box marked "continuing action."  Interestingly, many of the specific acts of discrimination referenced by plaintiff during the hearing and in her complaint took place outside of this "continuing violation" period.

–   *Denial of a Cruise during Pregnancy*

First, plaintiff contends that while on maternity leave she was denied a cruise for which she qualified.  Title VII provides, "Women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work ...." 42 U.S.C.A. § 2000e-(k).  For an employee to establish a prima facie case of  sex discrimination under Title VII based on employer's denial of a benefit during pregnancy, the employee must show that she belonged to a protected class, that she was qualified to receive benefit, that she was denied benefit, and that same benefit was available to others with similar

19

qualifications. *Lang v. Star Herald,* 107 F.3d 1308, 1311 (8th Cir.), *cert. denied*, 118 S.Ct. 114 (1997).

Plaintiff and Commonwealth agree that plaintiff was on maternity leave between January, 1994 and March, 1994.  Because plaintiff filed her EEOC charge against Commonwealth on August 7, 1995, more than 300 days later, this allegation is untimely.

Plaintiff contends that the denial of the cruise was part of a "continuing violation."  This theory is inapplicable.  It is undisputed that the alleged denial of the cruise was a discrete event, unrelated to any other occurrence of alleged discrimination;  plaintiff took maternity leave from KRST only once.  In addition, plaintiff failed to adduce any evidence of a company-wide, pervasive   policy of discrimination.

Alternatively, even if timely, plaintiff has failed to establish a prima facie case of sex discrimination because she was never qualified for the cruise.  Plaintiff admits that in order to qualify for the cruise, she needed to obtain a certain number of signatures, but she lacked one. She expected her supervisor, Mr. Sandman, to obtain the final signature for her in her absence, but he failed to do so.  Caskey Dep. Vol. I at 136.  Mr. Sandman's failure to do plaintiff a favor while she was on leave does not amount to an inference of discrimination on the basis of sex.  It was plaintiff's responsibility to obtain the signatures, and because she did not, she never qualified for the benefit of the cruise in the first place.  Therefore, she was never denied a benefit for which she was qualified.

–   *Job Opportunities*

Second, plaintiff contends that she was passed over for job opportunities.   In her complaint, she states, "Plaintiff was repeatedly passed over for promotion; these positions were

given to males, to those having intimate relations with other employees, or to those less qualified
and/or experienced than plaintiff, all in violation of the Defendants' own Personnel and EEO
policies."  Plaintiff's First Amended Complaint, ¶ 51.

Under Title VII, plaintiff initially must create an inference of a discriminatory motive by
proof that as a member of the protected class of women she was treated differently than a
similarly situated person of another class.  The Tenth Circuit has held that "[i]n order to establish
a prima facie claim of discriminatory failure to promote," a female employee is required to "show
that there were promotional opportunities available that were filled by males, that she was
qualified for promotion, and that despite her qualifications she was not promoted."  *Sprague v.*
*Thorn Americas, Inc.*, 129 F.3d 1355, 1362 (10th Cir. 1997) (internal citations omitted).

*Departing Employee's Positions and the Hiring of Michelle Kalanja*

At the hearing, plaintiff contended that when Anna Ayala and Marc Sternhagen left
Commonwealth, the availability of their positions should have been posted.  Ms. Ayala was
terminated in August of 1992 and Marc Sternhagen, a KRST general sales manager, left the
station in March of 1992; both instances occurred more than three years before plaintiff filed her
Charge of Discrimination.

Even if timely, the allegations regarding Ms. Ayala do not state a claim for sex
discrimination.  Ms. Ayala's position, even if posted, would not have represented a promotional
opportunity for plaintiff because it was the same as the position plaintiff already held.  Ms. Ayala
and plaintiff both were account executives.  *See, e.g.* Caskey Dep. Vol. I at 80.  Plaintiff testified
at her deposition that "no one in sales is ever above or below.  You're all equal.  But you can bill
more or less than your equals."  Caskey Dep. Vol. I at 79.  Second, plaintiff never established

21

that Ayala's "position" was ever filled.  There is nothing in the record indicating that there ever

was a vacancy.  Caskey Dep. Vol. I at 174-177.  In fact, plaintiff admitted during her deposition

that the KRST management had discretion not to hire a new person to replace the outgoing

account manager.  Caskey Dep. Vol. I at 80.  Third, at the hearing plaintiff's counsel stated that

Ms. Ayala's "replacement," if in fact there was a replacement, was a woman, Carrie Hastings.

      Plaintiff made similar allegations regarding the promotion of Pat Wadley, a woman, to

sales manager: the position was never posted and plaintiff was qualified to fill it.  These

allegations regarding failure to post do not come close to establishing an inference of

discrimination on the basis of sex.  In addition, plaintiff cites no cases which have held that an

employer's failure to post a position which affects all employees, both male and female alike, and

its failure to "offer" the position to a specific female employee amounts to discrimination.

Plaintiff presented no admissible evidence to support an inference that the failure to post the sales

manager position filled by Ms. Wadley was somehow targeted at plaintiff and/or at women

generally.

      The Tenth Circuit in *Durham v. Xerox Corp.*, *supra*, 18 F.3d 836, rejected the plaintiff's

contention that a failure to post a position was evidence of discriminatory intent because the

plaintiff neither alleged nor offered evidence "to prove that the failure to post was intentionally

discriminatory."  18 F.3d at 839.  In that case plaintiff was claiming a failure to promote based on

race in violation of 42 U.S.C. § 1981, but the same analysis applies to plaintiff's Title VII

contentions regarding sexual discrimination based on an alleged failure to post.

      Michelle Kalanja was hired in July of 1995 for the newly created position of local sales

manager.  Plaintiff claims that this position was never posted and that she was more qualified for

the position than Ms. Kalanja.  This allegation is the closest plaintiff comes to stating a claim for discriminatory failure to promote within the statutory limitations period.  However, this claim also does not raise a genuine issue of material fact regarding plaintiff's claim of sex discrimination.  It is undisputed that Ms. Kalanja is a woman and that she had prior radio management experience as a national sales manager.  Plaintiff has presented no evidence demonstrating that she was more qualified than Ms. Kalanja at the time Ms. Kalanja was hired.  Therefore, she has failed to establish a prima facie case of sex discrimination in regard to this local sales manager position.

*Anna Ayala's "Sales Lead Lists"*

Plaintiff alleges that when Anna Ayala left the station, her "sales lead lists" should have been given or made available to plaintiff and that Commonwealth's failure to give the lists to her somehow constitutes sex discrimination.  Plaintiff cites no cases so holding.  In addition, I could locate no cases in any jurisdiction implying that an employer's failure to give a sales list to an employee when another employee's employment is terminated states a claim for sex discrimination.  Mere allegations of impartial treatment are not sufficient to survive a motion for summary judgment.  *Connor v. Schnuck Markets, Inc.*, *supra,* 121 F.3d at 1398.  Moreover, plaintiff admits in her deposition that the "sales lead lists" were given to another woman, Carrie Hastings.  Caskey Dep. Vol. I at 179.

In addition, this claim is also untimely.  The account list was given to Ms. Hastings in 1992, when Ms. Ayala's position was terminated.   Plaintiff alleged no other related instances of discrimination, and, as stated earlier, never adduced any evidence of a company-wide, pervasive policy of discrimination.   Therefore, the continuing violation theory does not apply to this claim.

–    *Procedures*

Plaintiff contends that Commonwealth failed to follow procedures set forth in its employment manual and that this failure constitutes sex discrimination. Plaintiff could not present any admissible evidence demonstrating that this alleged failure to follow procedures affected men and women differently. Additionally, plaintiff could present no admissible evidence supporting an inference that Commonwealth's alleged failure to follow its procedures was directed at plaintiff or to women generally.

Plaintiff has failed to establish a genuine issue of material fact regarding her sex discrimination claim which will be dismissed with prejudice.

### 2.    SEXUAL HARASSMENT

A hostile work environment exists only when a plaintiff is subjected to sexual harassment sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *Seymore v. Shawyer & Sons, Inc.*, 111 F.3d 794, 798 (10th Cir. 1997).

The Supreme Court in *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), held that conduct within the purview of Title VII must be severe or pervasive enough to create both "an objectively hostile or abusive work environment--an environment that a reasonable person would find hostile"--and an environment the victim-employee subjectively perceives as abusive or hostile. *Id*. at 21-22, 114 S.Ct. at 370-71. *See also Smith v. Norwest Financial Acceptance, Inc.*,129 F.3d 1408, 1413 (10th Cir. 1997) (stating "Plaintiff must demonstrate that the harassment is severe under both the subjective and objective requirements of *Harris*").

24

Just recently, the Tenth Circuit noted:

We determine whether an environment is "hostile" or "abusive" by looking at the totality of circumstances, such as "the frequency of the discriminatory conduct;  its severity;  whether it is physically threatening or humiliating, or a mere offensive utterance;  ... whether it unreasonably interferes with an employee's work performance";  and the context in which the conduct occurred.

*Smith*, 129 F.3d at 1418 (10th Cir. Dec. 3, 1997) (citations omitted).

Plaintiff's sexual harassment claim centers around an alleged affair between two of Commonwealth's employees, Pat Wadley and Steve Sandman.[5]  Plaintiff claims she was offended by the following: she observed Pat Wadley "straddling and kissing" Stephen Sandman at a party, rubbing shoulders with him at the office at least three times, going behind closed doors with him, and uttering sexual innuendos to him.[6]  Plaintiff says that these public displays of affection between co-workers created an "untenable and intolerable working environment" and that the affair adversely affected her work performance.[7]

There is nothing in the record to suggest that plaintiff was subjected to acts of harassment or discrimination based on *her* gender that were "severe and pervasive" enough to create an

---

[5]When questioned at the January 16, 1998 hearing about the existence of other incidents of sexual harassment, counsel for the plaintiff responded, "I have no other incidents, putting aside the affair.... I don't have any other incidents than that affair, Your Honor."  Tr. II at 35-36.

[6]Although plaintiff's complaint states that "[p]laintiff witnessed various physical intimacies" between Ms. Wadley and Mr. Sandman, Amended Complaint ¶ 19, when pressed at the hearing these were the only incidents counsel for the plaintiff listed.  Tr. II at 28-30.

[7]Plaintiff generally alleges that she "suffered a complete mental and physical breakdown due to untenable and intolerable working conditions" at KRST, her place of employment.  Memorandum in Opposition to Defendants' Motions for Summary Judgment, Statement of Disputed Material Facts, ¶ 5.  Plaintiff presents no medical support for this conclusion.  Simply alleging a breakdown does not create a claim for sexual harassment, especially when that claim is based upon allegations which applied with equal force to all  Commonwealth employees.

25

objectively "hostile and abusive work environment."

In addition, recently the Tenth Circuit has implied that a claim of gender discrimination based upon a voluntary romantic affiliation between two co-workers does not state a claim under Title VII.  The court held, "Title VII's reference to 'sex' means a class delineated by gender, rather than sexual affiliations. . . .  Favoritism, unfair treatment and unwise business decisions do not violate Title VII unless based on a prohibited classification."  *Taken v. Oklahoma Corporation Commission*, 125 F.3d 1366, 1370 (10th Cir. 1997).  The plaintiffs in *Taken* alleged that a supervisor preselected his paramour, one of plaintiff's co-workers, for a promotion even though she was less qualified than either plaintiff.  The court stated that this allegation did not state a Title VII claim because the plaintiffs "were in the same position as all men and all other women would have been ...."  *Id.*  Similarly, here plaintiff has presented no admissible evidence supporting the inference that she was in a position different from all the men and the other women at her office.  *See Maine v. Okla. Dept. of Corrections,* No. 97-6027, 1997 WL 6027, at *2 (10th Cir. Sept. 30, 1997) (affirming summary judgment on female plaintiff's Title VII hostile work environment claim, in part because plaintiff "failed to present evidence that other similarly-situated men were treated differently than she").

Finally, "isolated incidents of alleged harassment, while inappropriate and boorish, do not constitute pervasive conduct."  *Smith*, 129 F.3d at 1414.  Although Mr. Sandman's and Ms. Wadley's behavior as described by plaintiff was distasteful and impolite, it does not amount to pervasive conduct.  The facts viewed in the light most favorable to plaintiff, do not support a claim for sexual harassment.

### 3.     CONSTRUCTIVE DISCHARGE

Plaintiff did not resign during Commonwealth's tenure as owner of KRST.  At the hearing, plaintiff's counsel conceded that based upon my ruling that no identity of interest exists between Commonwealth and Crescent, plaintiff's constructive discharge claim does not apply to Commonwealth.  Tr. I at 16.

### 4.     STATE LAW CLAIMS (Counts III-VI)

Because I have granted summary judgment on all of plaintiff's federal claims against Commonwealth, under 28 U.S.C. § 1367(c)(3) I decline to exercise supplemental jurisdiction over her state law claims.

IT IS THEREFORE ORDERED that:

(1)     Crescent Communications' Motion for Summary Judgment (Doc. No. 54 ) is granted in part:

    (A)     All of plaintiff's federal claims under Title VII against Crescent asserted in Counts I and II will be dismissed with prejudice in a separate summary judgment;

    (B)     Plaintiff's state law claims against Crescent asserted in Counts III, IV, V and VI are hereby dismissed without prejudice;

(2)     Commonwealth Broadcasting's Motion for Summary Judgment on the Retaliation Claim (Doc. No. 58) is granted and plaintiff's retaliation claim asserted in Count I and Count II will be dismissed with prejudice in a separate summary judgment; and

(3)     Commonwealth Broadcasting's Motion for Summary Judgment on Counts I, III, IV, V & VI (Doc. No. 62) is granted in part:

(A)   All of plaintiff's other Title VII claims against Commonwealth asserted in Count I will be dismissed with prejudice in a separate summary judgment; and

(B)   Plaintiff's state law claims against Commonwealth asserted in Counts III, IV, V & VI are hereby dismissed without prejudice.

UNITED STATES DISTRICT JUDGE

28